UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph A. Addie,                                     Civil No. 12-281 (PAM/TNL)

                Plaintiff,

v.                                           **MEMORANDUM AND ORDER**

JP Morgan Chase Bank, N.A.,

                Defendant.

This matter is before the Court on Defendant's Motion for Summary Judgment and Motion for Rule 11 Sanctions. For the reasons that follow, the summary judgment motion is granted and the sanctions motion is denied.

**BACKGROUND**

In January 2007, Plaintiff Joseph Addie entered into an agreement with National Investment Group under which Addie agreed to take out nine mortgage loans on six rental properties in Otsego, Minnesota. The mortgage loans totaled nearly $2 million. In exchange, Addie alleges that NIG promised to: pay him $5,000 per property, manage the properties, make the monthly loan payments for two years, and then pay him a portion of sale proceeds. Addie acknowledges that his role was that of a "straw buyer," which is a person who obtains a loan for the purchase of property the straw buyer never intends to own or occupy. United States v. Parish, 565 F.3d 528, 531 n.2 (8th Cir. 2009).

Defendant JP Morgan Chase Bank, N.A. extended two of the nine loans for a total of $309,880. Addie admits that he signed the loan documents and attended the mortgage closings. Addie contends that he was forced to rush through the closing process and that he did not know the contents of what he signed. Addie admits, however, that he did not disclose to Chase that he had taken out several other mortgages (Addie Dep. (Docket No. 20-2) Ex. 93), that he falsely attested that he resided at one of the mortgaged properties (Addie Dep. Ex. 97), and that he falsely reported a monthly income of $6,800 (Addie Dep. Ex. 101). In short, Chase was not aware that Addie was a straw buyer. Chase maintains that it would not have extended the loans had it known the truth.

Unfortunately for Addie, but perhaps not surprisingly, NIG did not uphold its end of the bargain. Addie was left with staggering monthly mortgage payments that he could not afford to pay. Addie defaulted on the Chase loans, among others, within a few months.

On June 25, 2007, Addie sent a letter to Chase explaining that he had secured the defaulted Chase loans in his name, but did so only after being defrauded by NIG and others. (Addie Dep. Ex. 111.) Addie indicated that he "hope[d] to negotiate a deed in lieu of foreclosure." (Id.) Addie did not contend that the loans were not chargeable to him or that the defaults should not be referenced on his credit reports. Addie asserts that Chase never responded to his letter and Chase does not provide any evidence to the contrary. (Addie Aff. (Docket No. 24) ¶ 22.)

According to the record, the parties next communicated in 2008. According to Addie, he called Chase and "attempted to describe what happened[.]" (Id. ¶ 24.) Chase responded

2

by letter dated March 19, 2008. (Addie Dep. Ex. 105.) The letter, which was addressed to Addie in care of his attorney Ryan Ahlberg, states that Addie reported that his name and social security number had been used without his knowledge to obtain mortgage loans. (Id.) Chase requested that Addie provide copies of his driver's license, social security card, any related police reports, and a letter providing the details of the alleged fraud. (Id.) Chase also requested that Addie fill out a Fraud/Forgery Questionnaire which was enclosed with the letter. (Id.) Chase provided a return FedEx envelope and asked Addie to provide the requested information within 15 days. (Id.) Addie did not respond to the letter. When shown the letter during his deposition in July 2013, Addie testified that he had never seen it before:

> Q: Did you fill out the Fraud and Forgery Questionnaire attached to this letter?
>
> A: I don't believe so.
>
> Q: Why not? . . .
>
> A: I didn't fill it out because actually I didn't see this.

(Addie Dep. at 270.) Then, in his affidavit filed in response to Chase's Motion, Addie stated that he "did receive paperwork back from Chase" but chose not to respond because "the paperwork misstated the nature of the fraud." (Addie Aff. ¶ 24.) Whatever the story, it is undisputed that Addie did not fill out the forms. It is also undisputed that neither Addie nor his attorney contacted Chase to correct its misapprehension of the facts.

In June 2008, Addie sued NIG and others in Hennepin County District Court alleging fraud. Addie secured a default judgment against some of the defendants in December 2009. (Addie Aff. ¶¶ 28-31.) In March 2010, Addie contacted several Credit Reporting Agencies to explain the circumstances surrounding his defaulted mortgage loans and to request that the debt related to those loans be deleted from his credit report. The CRAs then sent Automated Credit Dispute Verification inquiries to Chase regarding the disputed mortgage loans. Chase investigated the inquiries and determined that "Addie had in fact taken out the loans at issue, that the loans were in default, that foreclosure had been completed, and that Chase's credit reporting was accurate." (Tucker Aff. (Docket No. 19) ¶ 4.)

Addie then brought this suit against Chase under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1), claiming that Chase willfully and negligently failed to comply with its duty to investigate the disputed mortgage debt and failed to instruct the CRAs to delete or modify the debt.

**DISCUSSION**

**A.     Summary Judgment**

Summary judgment is appropriate where there are no genuine issues of material fact and the case can be decided as a matter of law. Fed. R. Civ. P. 56. The moving party bears the burden of proof and the evidence must be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Yet "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just,

4

speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Chase argues that it is entitled to summary judgment because there is no dispute in the record as to whether it undertook a reasonable investigation of Addie's dispute. Section 1681s–2(b) of the FCRA requires a furnisher of credit information, on receiving notice from a CRA that a consumer has disputed a debt, to investigate the dispute, to report the results of the investigation to the CRA, and, if the furnisher concludes that the disputed debt is inaccurate, incomplete, or unverifiable, to take certain additional remedial measures. 15 U.S.C. § 1681s–2(b)(1); Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1038-39 (D. Minn. 2010) (Schiltz, J.), aff'd, 413 F. App'x 925 (8th Cir. 2011). The furnisher's investigation must be "reasonable." Schaffhausen v. Bank of Am., N.A., 393 F. Supp. 2d 853, 858 (D. Minn. 2005) (Tunheim, J.). When the claimant cannot show that the information about his debt as verified by the furnisher was inaccurate, the furnisher's investigation is deemed reasonable and no claim will lie under § 1681s–2(b). Edeh, 748 F. Supp. 2d at 1040.

Here, it is undisputed that the information Chase yielded during its investigation of Addie's mortgage debt was accurate. Chase verified that Addie had taken out the loans, that the loans were in default, and that foreclosure had been completed. Addie does not dispute any of those facts. Chase's credit report was therefore accurate in every respect and its investigation was patently reasonable.

Addie's real complaint is that he was defrauded by NIG and others. But he has no recourse under the FCRA for his damages. Addie suggests that the default judgment against those who allegedly defrauded him should somehow render the information verified by Chase inaccurate or, better yet, should excuse him from having to pay his debts. Unfortunately for Addie, the alleged underlying fraud may provide an explanation as to why he defaulted on his mortgage loans, but it does not extinguish those loans.

In short, Chase's investigation was reasonable and in keeping with the FCRA's requirements. Chase is entitled to summary judgment.

**B.     Rule 11**

Chase also moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure, arguing that Addie's complaint is frivolous and rests on false and misleading allegations.

After careful consideration of the parties' arguments, the Court concludes that, even if a Rule 11 violation did occur, it will not award sanctions. See Fed. R. Civ. P. 11(c) (providing that if a court determines that subdivision (b) has been violated, a district court may impose an appropriate sanction). The Court notes, however, that Addie's Complaint is dangerously close to frivolous and firmly reminds Addie and his counsel of the need to comply with the requirements of Rule 11. If either fails to comply with Rule 11 in any future filing with the Court, the Court will seriously consider sanctions at that time.

**CONCLUSION**

There are no genuine issues of material fact precluding summary judgment and Rule 11 sanctions are not warranted at this time. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Rule 11 Sanctions (Docket No. 12) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Docket No. 16) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 24, 2013

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge